IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AARON PURNELL, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civil Action No. 19-1344-RGA |
| | : | |
| ROBERT MAY, Warden, and | : | |
| ATTORNEY GENERAL OF THE | : | |
| STATE OF DELAWARE, | : | |
| | : | |
| Respondents. | : | |

# **MEMORANDUM OPINION**

Aaron Purnell.  *Pro se* Petitioner.

Andrew J. Vella, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondents.

September 15, 2022
Wilmington, Delaware

/s/ Richard G. Andrews
ANDREWS, UNITED STATES DISTRICT JUDGE:

Pending before the Court are Petitioner Aaron Purnell's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, Amended Petition, and a Memorandum in Support (collectively referred to as "Petition").  (D.I. 2; D.I. 12; D.I. 16)  The State filed an Answer in opposition.  (D.I. 20)  For the reasons discussed, the Court will dismiss the Petition.

I.  **BACKGROUND**

> [Petitioner] was arrested on July 28, 2016, in connection with a shooting incident which had occurred at Alder Park Apartments south of Dover on July 24, 2016. On that date, Corporal Edwin Justiniano ("Cpl. Justiniano") of the Delaware State Police responded to a complaint that a man had pushed a woman in the commons area outside one of the apartment buildings and had displayed a firearm. Upon arriving at Alder Park Apartments at approximately 8:20 p.m., Cpl. Justiniano saw [Petitioner] in the area where the complaint had been reported; he could see that [Petitioner] appeared to match the description of the assailant. Cpl. Justiniano told [Petitioner] to "come over here," at which point [Petitioner] and another individual who was in the area fled on foot behind one of the nearby apartment buildings. Cpl. Justiniano, who was alone, gave chase. The second individual soon veered off and ran in a different direction from [Petitioner]. Cpl. Justinano chose to let that person go and continued to chase [Petitioner].
>
> As Cpl. Justiniano pursued [Petitioner] behind the building, [Petitioner] turned and fired a shot at him from a distance of about 15 or 20 feet.  Luckily, the shot missed.  Cpl. Justiniano immediately returned fire but his shots also missed.  He continued to follow the fleeing [Petitioner], who took a circuitous route but was eventually found in a bush in a nearby backyard.  Police located a 9 mm pistol in the bush; this firearm was later determined to have fired a 9 mm shell casing found at the scene of the shooting.  When the shooting occurred, it was not yet dark; for this reason, Cpl. Justiano was easily able to identify [Petitioner] as the person who tried to shoot him. Cpl. Justiniano's motor vehicle recorder was operating at the time of the incident and preserved an audio recording of Cpl. Justiniano's initial verbal interactions with [Petitioner] and of the shots which were fired.  The incident occurred out of range of the camera so there was no visual recording.

*State v. Purnell*, 2018 WL 5733672, at *1 (Del. Super. Ct. Oct. 31, 2018).

On June 19, 2017, Petitioner pled guilty in the Delaware Superior Court to attempted first degree murder and possession of a firearm during the commission of a felony ("PFDCF"). (D.I. 21-1 at Entry No. 28) The Superior Court sentenced Petitioner to an aggregate twenty-eight years of incarceration. (D.I. 21-6) Petitioner did not appeal his convictions.

In July 2017, Petitioner filed a motion for modification of sentence, which the Superior Court denied on September 11, 2017. (D.I. 21-7; D.I. 21-9)

In April 2018, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 21-1 at Entry No. 33; D.I. 21-10) A Superior Court Commissioner issued a report recommending the denial of the Rule 61 motion. (D.I. 21-13); *Purnell*, 2018 WL 5733672, at *4. The Superior Court adopted the Report and Recommendation and denied the Rule 61 motion on January 23, 2019. (D.1. 21-16); *State v. Purnell*, 2019 WL 328560, at *1 (Del. Super. Ct. Jan. 23, 2019). Petitioner appealed, but the Delaware Supreme Court dismissed the appeal as untimely. (D.I. 21-5); *Purnell v. State*, 208 A.3d 355 (Table), 2019 WL 1494631 (Del. Apr. 2, 2019).

## II.   GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only

"on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Additionally, AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law.  *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i)  there is an absence of available State corrective process; or
>   (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).  A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural

3

manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989). A federal legal claim is "fairly presented" to state courts when there is: "(1) reliance on pertinent federal cases employing constitutional analysis; (2) reliance on state cases employing constitutional analysis in like fact situations; (3) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; [or] (4) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless,* 172 F.3d at 260; *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the

4

defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

### III. DISCUSSION

Petitioner's timely filed Petition asserts the following six Claims: (1) defense counsel provided ineffective assistance by engaging in "fraudulent tactics and [employing] deceitful measures" in order to convince Petitioner to plead guilty (D.I. 16 at 5); (2) the Superior Court violated Petitioner's Sixth Amendment rights by denying his request for new counsel and essentially forcing him to represent himself or keep defense counsel who was prejudiced against him (*id.* at 7); (3) the State violated *Brady v. Maryland,* 373 U.S. 83 (1963) by not informing

5

Petitioner about the misconduct of the State's firearm expert, Carl Rone (*id*. at 8); (4) the manner in which the Superior Court conducted Petitioner's Rule 61 proceeding amounted to an abuse of discretion (*id*. at 10); (5) defense counsel provided ineffective assistance by failing to file a motion to suppress the evidence obtained during Petitioner's initial encounter with the police (*id*. at 20); and (6) the State violated *Brady* because the police failed to collect and preserve video surveillance (*id*. at 25-27).

      The record reveals that Petitioner did not exhaust state remedies for any of the Claims in his Petition. Petitioner did not file a direct appeal. And, although Petitioner included Claims One, Two, Three, and Five in his Rule 61 motion and subsequently appealed the Superior Court's denial of those Claims, the Delaware Supreme Court dismissed his Rule 61 appeal as untimely. This procedural history demonstrates that Petitioner did not fairly present the instant six Claims to the Delaware Supreme Court in a manner permitting that court to consider the Claims on their merits.

      At this juncture, if Petitioner tried to present Claims One through Six in a new Rule 61 motion, the motion would be barred as untimely under Rule 61(i)(1) and barred as successive under Rule 61(i)(2). *See Trice v. Pierce*, 2016 WL 2771123, at *4 (D. Del. May 13, 2016); Del. Super. Ct. Crim. R. 61(i)(2) (barring second or successive motions unless certain pleading requirements are satisfied). Although Rule 61(i)(1) provides for an exception to the one-year time limitation if the untimely Rule 61 motion "asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final," no such right is implicated in the instant argument. Similarly, the exceptions to Rule 61(i)(1)'s time-bar and 61(i)(2)'s successive bar contained in Rule 61(i)(5) and (d)(2) do not apply to Petitioner's case, because he does not

6

allege a credible claim of actual innocence, lack of jurisdiction, or that a new rule of constitutional law applies to the instant argument. Given these circumstances, the Court must treat Claims One through Six as exhausted but procedurally defaulted, meaning that the Court cannot review the merits of the Claims absent a showing of cause-and-prejudice or a miscarriage of justice.

Petitioner does not attempt to establish cause for his default of Claims One through Six. Petitioner's failure to establish cause eliminates the need to address prejudice. In addition, the miscarriage of justice exception to the procedural default doctrine does not apply to excuse Petitioner's default, because he has not provided any new reliable evidence of his actual innocence. Accordingly, the Court will deny Claims One through Six as procedurally barred from habeas review.

## IV.     CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Additionally, when a district court denies a habeas claim or petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition

7

states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling.  *See Slack*, 529 U.S. at 484.

The Court has concluded that the instant Petition does not warrant relief.  Reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a certificate of appealability.

## V. CONCLUSION

For the reasons discussed, the Court will deny the Petition without holding an evidentiary hearing.

An appropriate Order will be entered.